**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| Advanced Micro Devices, Inc., et al., <br><br> Plaintiff(s), <br><br> vs. <br><br> LG Electronics, Inc., et al., <br><br> Defendant(s). | Case Number: 3:14-cv-01012-SI <br><br> **STIPULATION & [PROPOSED] ORDER RE: DISCOVERY OF ELECTRONICALLY STORED INFORMATION FOR PATENT LITIGATION** |

Upon the stipulation of the parties, the Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination of this action," as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified in the Court's discretion or by stipulation. The parties shall jointly submit any proposed modifications within 30 days after the Case Management Conference.

3. As in all cases, costs may be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics are cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. The parties are expected to comply with the District's E-Discovery Guidelines ("Guidelines") and are encouraged to employ the District's Model Stipulated Order Re: the Discovery of Electronically Stored Information and Checklist for Rule 26(f) Meet and Confer regarding Electronically Stored Information.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45

shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe as set forth in the Guidelines.

10. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional custodians, upon showing a distinct need based on the size, complexity, and issues of this specific case. Cost-shifting may be considered as part of any such request.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The Court encourages the parties to confer on a process to test the efficacy of the search terms. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a

1  separate search term unless they are variants of the same word. Use of narrowing search criteria
2  (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered
3  when determining whether to shift costs for disproportionate discovery. Should a party serve
4  email production requests with search terms beyond the limits agreed to by the parties or granted
5  by the Court pursuant to this paragraph, this shall be considered in determining whether any
6  party shall bear all reasonable costs caused by such additional discovery.

7        12. Nothing in this Order prevents the parties from agreeing to use technology assisted
8  review and other techniques insofar as their use improves the efficacy of discovery. Such topics
9  should be discussed pursuant to the District's E-Discovery Guidelines.

10       13. *ESI Production.* Electronic data should be provided in the following format:

11          A.    *TIFFs.* Single-page 300 dpi CCITT Group IV black and white TIFFs
12              should be provided (unless the ESI contains color, as discussed below),
13              with page break information in load file identifying document start and
14              end.
15              Conversion of Word documents: When Word documents are converted to
16              TIFFs, the version that will be converted is as it was last saved by the
17              custodian. This means that if it was last saved with track changes turned
18              on that the images and metadata will reflect the track changes.
19              Conversion of PowerPoint documents: When PowerPoint documents are
20              converted to TIFFs, the version that will be converted will show the
21              speaker notes, to the extent they exist.
22          B.    *Color.* ESI containing color will be provided in JPG format.
23          C.    *Database Load Files/Cross-Reference Files.* Documents should be
24              provided with (1) a Concordance delimited file and (2) an Opticon
25              delimited file.
26              The objective coding and/or electronic file metadata should be provided in
27              the following format:
28                   1.    Fields should be delimited by the default Concordance field

|   |   |   |
|---|---|---|
| 1 | | delimiter for ANSI character 20 (). |
| 2 | 2. | String values within the fields should be enclosed with a text delimiter (þ). |
| 3 | 3. | The first line should contain objective coding and/or electronic field metadata headers, and below the first line, there should be exactly one line for each document. |
| 4 | 4. | Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row. |
| 5 | 5. | Multi-values should be separated by a semicolon. |

D. *Text files*. For each document, a document-level text file should be provided in addition to the TIFFs. The text of native files should be extracted directly from the native file, and each text file will be named using its corresponding image files (*e.g.*, ABC0000001.TXT). Documents for which text cannot be extracted will be produced with OCR.

E. *Redactions*. With respect to documents containing redacted text, no text will be provided for the redacted portion. OCR will be provided for the unredacted portions of the documents.

F. *Unique IDs*. Each image should have a unique file name which will be the Bates number of that page. The Bates number must appear on the face of the image in the lower right corner (*e.g.*, ABC0000001.TIF).

G. *Unique Documents*. Parties agree to de-duplicate, using a verifiable process, documents within custodian. While a single document could be produced several times in the production, the document will only be produced one time for a single custodian.

H. *Metadata*. Because the majority of metadata is unusable and of little value, and the time required to review metadata makes its production cost-prohibitive, the parties will not produce metadata absent a showing of the

1     need for and relevance of such data with regard to specific documents.

2   I.   *Native Format.* The parties have agreed that the following documents will be produced in native format: Excel files, Access Files, Microsoft Project Files, Source Code, CAD files, GDS files, and GDSII files. The parties reserve their rights to seek additional electronic documents, including PowerPoint presentations, in their native format. Native files will be produced with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation, and the name of the native file.

10   J.   *Databases*. Certain types of databases kept in the normal course of business contain information that allows for analysis and computation and as such the data will be produced in an electronic format. Data from these types of databases will be produced in database or delimited text file format, as reasonably available. The parties agree to identify the specific databases, by name and platform or engine (*e.g.*, Oracle, SQL), that may contain responsive information.

17   K.   *Non-convertible Files*.

18     1.   Certain types of files such as system, program, video, and sound files may not be amenable to conversion into anything meaningful in TIFF format. Responsive, non-convertible files will be produced in the form of a placeholder TIFF image. Some examples of file types that may not convert include file types with the following extensions: *.ai *.aif *.bin *.brd *.cab *.cfg *.chi *.chm *.com *.dll *.dsn *.eps *.exe *.exp *.hlp *.hqx *.idb *.ilk *.iso *.ivi *.ivt *.ix *.lib *.mpeg *.mpg *.mov *.mp3 *.mpe *.msi *.nls *.obj *.ocx *.opj *.opt *.pdb *.pch *.psd *.psp *.ptf *.ram *.res *.rm *.rmi *.step *.sys *.swf *.snd *.tag *.tlh *.tmp *.trg *.ttf *.vbx *.wav *.wmv *.wma*.wpg *.xfd.

        2.       Other files may not be able to be converted to TIFF due to password protection or corruption (for example). If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

        3.       Nothing herein is intended to include productions of data produced from databases.

        4.       Non-convertible files will be produced natively and with a placeholder TIFF image. Each TIFF placeholder will contain the endorsed Bates number, endorsed confidentiality designation, and the name of the non-convertible file, including the file extension.

    L.    *Gaps*. Productions should contain sequential Bates numbers with no gaps. There should be no gaps in Bates numbers between productions. A unique production volume number will be used for each production. If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

    M.    *Parent-child Relationships*. Parent-child relationships (the association between an attachment and its parent document) must be preserved.

14.    *Production Media and Labels*. Documents will be produced on CD-ROM or DVD or on portable hard drives. The parties agree to attach a label to each piece of media containing production data. The label will provide the following information:

Case name

Case number

Production date

Volume number

Bates range

Confidentiality designation (if applicable)

15.    *Inadvertent Production of Documents*. Inadvertent production of any document

6

produced in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the work-product doctrine, will not be deemed to waive any privilege or work-product protection.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 11, 2014          /s/ William H. Manning

Counsel for Plaintiff

WILLIAM H. MANNING (*pro hac vice*)
E-mail: WHManning@rkmc.com
AARON R. FAHRENKROG (*pro hac vice*)
E-mail: ARFahrenkrog@rkmc.com
LOGAN J. DREW (*pro hac vice*)
E-mail: LJDrew@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone:     612–349–8500
Facsimile:     612–339–4181

J. SCOTT CULPEPPER (*pro hac vice*)
E-mail: JSCulpepper@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
One Atlantic Center
1201 West Peachtree St., Suite 2200
Atlanta, GA 30309–3453
Telephone:     404–760–4300
Facsimile:     404–233–1267

DAVID MARTINEZ, Bar No. 193183
DMartinez@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067–3208
Telephone:     310-552–0130
Facsimile:     310-229–5800

Attorneys for Plaintiffs
Advanced Micro Devices, Inc. and ATI
Technologies ULC

| | |
|---|---|
| Dated: July 11, 2014 | /s/ Michael J. McKeon |
| | Counsel for Defendant |

KELLY C. HUNSAKER, Bar No. 168307
E-mail: hunsaker@fr.com
**FISH & RICHARDSON P.C.**
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone:     650-839-5070
Facsimile:      650-839-5071

MICHAEL J. McKEON (*pro hac vice*)
E-mail: mckeon@fr.com
CHRISTIAN CHU, Bar No. 218336
E-mail: chu@fr.com
RICHARD A. STERBA (*pro hac vice*)
E-mail: sterba@fr.com
STEVEN A. BOWERS, Bar No. 226968
E-mail: bowers@fr.com
R. ANDREW SCHWENTKER (*pro hac vice*)
E-mail: schwentker@fr.com
**FISH & RICHARDSON P.C.**
1425 K Street, NW, 11th Floor
Washington, D.C. 20005
Telephone:   202-783-5070
Facsimile:    202-783-2331

Attorneys for Defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc.

*Plaintiffs' counsel attests that concurrence in the filing of this document has been obtained from the above-named signatory.*

**IT IS ORDERED** that the forgoing Agreement is approved.

Dated:

THE HONORABLE SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE

8