WILLIAM H. MANNING (*pro hac vice*)
E-mail: WHManning@rkmc.com
AARON R. FAHRENKROG (*pro hac vice*)
E-mail: ARFahrenkrog@rkmc.com
LOGAN J. DREW (*pro hac vice*)
E-mail: LJDrew@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone:    612–349–8500
Facsimile:     612–339–4181

J. SCOTT CULPEPPER (*pro hac vice*)
E-mail: JSCulpepper@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
One Atlantic Center
1201 West Peachtree St., Suite 2200
Atlanta, GA 30309–3453
Telephone:    404–760–4300
Facsimile:     404–233–1267

DAVID MARTINEZ, Bar No. 193183
DMartinez@rkmc.com
**ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**
2049 Century Park East, Suite 3400
Los Angeles, CA 90067–3208
Telephone:    310-552-0130
Facsimile:     310-229-5800

Attorneys for Plaintiffs
ADVANCED MICRO DEVICES, INC.
and ATI TECHNOLOGIES ULC

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ADVANCED MICRO DEVICES, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> LG ELECTRONICS, INC., et al., <br><br> Defendants. | Case No. 3:14-cv-1012-SI <br><br> **PLAINTIFFS ADVANCED MICRO DEVICES, INC.'S AND ATI TECHNOLOGIES ULC'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION PENDING *INTER PARTES* REVIEW** <br><br> Hearing:  January 30, 2015, 9:00 a.m. |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................ 1

II.     THIS DISPUTE HAS GONE FAR PAST ITS "INITIAL STAGES." ........................... 2

III.    MANY ASPECTS OF LGE'S SUPPORT FOR A STAY ARE WRONG.................... 10

IV.     THE COURT SHOULD DENY LGE'S MOTION TO STAY. .................................... 13

        A.      Factor 1:  The Stage of Litigation Supports Denying a Stay Because
                the Parties Have Exchanged Significant Fact Discovery and Have
                Undertaken Claim Construction Efforts Across All Thirteen
                Asserted Patents. ................................................................................... 13

        B.      Factor 2:  A Stay Will Not Simplify or Streamline Issues for Trial
                Because the PTAB Has Not Instituted Any of LGE's Petitions and
                the Possibility of Narrowing Issues Is Speculative Only. ............................ 15

        C.      Factor 3:  A Stay Will Cause Undue Prejudice and Impose a Tactical
                Disadvantage Upon AMD. ........................................................................ 19

        D.      LGE's Dilatory Tactics and Non-Compliance with This Court's
                Procedures Justify Denying a Stay. ........................................................... 20

V.      CONCLUSION .................................................................................................. 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

# TABLE OF AUTHORITIES

**Cases**

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*
No. 11-cv-6391-SI, 2013 U.S. Dist. LEXIS 189033 (N.D. Cal. June 11, 2013) ................. 15

*Asetek Holdings, Inc. v. Cooler Master Co.,*
No. 13-cv-457, 2014 U.S. Dist. LEXIS 47134 (N.D. Cal. Apr. 3, 2014) ............................ 20

*Aylus Networks, Inc. v. Apple Inc.,*
No. 13-cv-4700-EMC, 2014 U.S. Dist. LEXIS 157228 (N.D. Cal. Nov. 6, 2014) ............. 13

*ESCO Corp. v. Berkeley Forge & Tool, Inc.,*
No. 09-cv-1635, 2009 U.S. Dist. LEXIS 94017 (N.D. Cal. Sept. 28, 2009) ...................... 13

*Freeny v. Apple Inc.,*
No. 13-cv-00361-WCB, 2014 U.S. Dist. LEXIS 99595 (E.D. Tex. July 22, 2014) ............. 15

*IpLearn-Focus, LLC v. Microsoft Corp.,*
No. 14-cv-00151-JD, Dkt. #65 (N.D. Cal. Dec. 12, 2014) ................................................... 16

*Netlist, Inc. v. Smart Storage Sys., Inc.,*
No. 13-cv-5889-YGR, 2014 U.S. Dist. LEXIS 116979 (N.D. Cal. Aug. 21, 2014) ........... 16

*Network Appliance Inc. v. Sun Microsystems Inc.,*
No. 07-cv-06053-EDL, 2008 U.S. Dist. LEXIS 76717 (N.D. Cal. May 23, 2008) ............. 17

*TPK Touch Solutions, Inc. v. Wintek Electro-Optics Corp.,*
No. 13-cv-02218-JST, 2013 U.S. Dist. LEXIS 162521 (N.D. Cal. Nov. 13, 2013) ............. 15

*Universal Elecs., Inc. v. Universal Remote Control, Inc.,*
943 F. Supp. 2d 1028 (N.D. Cal. 2013) ..................................................................... 13, 20

*Verinata Health, Inc. v. Ariosa Diagnostics, Inc.,*
No. 12-cv-05501-SI, 2014 U.S. Dist. LEXIS 4025 (N.D. Cal. Jan. 13, 2014) .... 13, 15, 16, 19

**Statutes**

35 U.S.C. § 311 ........................................................................................................................ 18

35 U.S.C. § 314 ................................................................................................................... 8, 16

35 U.S.C. § 316 .......................................................................................................................... 8

**Other Authorities**

J. Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II,*
21 FED. CIR. BAR J. 4 (2012) ................................................................................................. 1

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

**TABLE OF AUTHORITIES**

**Rules**

Fed. R. Civ. P. 1 ........................................................................................................... 21

Patent L.R. 3-4 ............................................................................................... 11, 21, 22

Patent L.R. 4-2 ................................................................................................... 19, 22

Patent L.R. 4-3 ........................................................................................................... 20

## I.    INTRODUCTION

This case has proceeded well beyond its early stages, and the parties have expended tremendous resources disclosing contentions, exchanging written discovery responses, producing documents, and negotiating nearly eighty disputed claim terms and proposed constructions.  LGE has impeded the progress of discovery, has failed to comply with its obligations under the Patent Local Rules, and now seeks to use those tactics to its advantage to deprive AMD of its right to be heard by this Court at any time in the near future.  LGE's arguments about IPRs streamlining this case are speculative at best and most often just wrong.  AMD will suffer prejudice every day that it cannot avail itself of this forum to resolve its infringement dispute against LGE and obtain the damages it is rightfully owed and reinvest in its own business.  LGE's request for a stay of the litigation should be denied.

LGE's attempt to use the Court's Patent Local Rules to benefit its IPR petitions through claim construction also exposes LGE's request for a stay as purely a litigation tactic.  LGE waited until deep into the claim construction process—nine months after AMD filed suit—to file its IPR petitions.  It proposed over 50 terms for construction from AMD's patents, forcing AMD to respond with constructions.  After seeing AMD's constructions, LGE filed its IPR petitions—and relied upon AMD's proposed constructions for two AMD patents.  The complete picture tells a story that LGE has used the Patent Local Rules to benefit its IPR petitions and violated the Rules opportunistically when suitable to support LGE's motion for a stay.

The IPR process was created to provide small businesses an opportunity to challenge dubious patents that might otherwise prevent those businesses from taking products to market.  *See* J. Matal, *A Guide to the Legislative History of the America Invents Act: Part II of II*, 21 Fed. Cir. Bar J. 4, 600-05 (2012).  It was not created to allow a unilateral and tactical change in forum by a multi-billion-dollar company like LGE.  This is not a case brought by a "patent troll" or non-practicing entity.  It is a dispute between two sophisticated companies that have negotiated for years over this matter.  AMD has

AMD'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY LITIGATION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

invested billions in research and development, leading to a valuable patent portfolio that drives all types of computers today—whether labeled desktops, laptops, servers, smartphones, tablets, smart TVs, or smart appliances—and LGE uses AMD's patented technology across many varied computer product lines.  Only this forum will drive the parties' resolution of this business-to-business dispute.

The Court can best promote efficiency and conservation of resources by proceeding with the litigation in parallel with any IPR proceedings instituted by the PTAB.  LGE's IPR petitions will not even resolve all the invalidity positions it has asserted in this litigation.  Rulings made by the Court in litigation will promote the parties' evaluations of the appropriate resolution of this matter.  Parallel litigation also will avoid prejudice to AMD and prevent the tactical advantage LGE has attempted to create by delaying discovery and failing to comply with the Patent Local Rules.  This litigation should proceed without a stay.

## II.     THIS DISPUTE HAS GONE FAR PAST ITS "INITIAL STAGES."

This is a computer systems technology dispute between two multi-billion-dollar companies.  Advanced Micro Devices, Inc., with its subsidiary ATI Technologies ULC (collectively "AMD"), is an innovative and pioneering technology company that designs hardware and software that make up computer systems sold to businesses and consumers.  AMD designs and integrates cutting-edge technology making possible high-end graphics, high-definition video, and other innovative features that power millions of computers.  Since its founding in 1969, AMD has been an industry leader in the development of microprocessors, motherboard chipsets, embedded processors, graphics processors, embedded systems applications, and the software that operates this hardware in computer systems.

As high-powered computing proliferated beyond the desktop computer, server, and laptop, companies such as LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc. (collectively "LGE") have taken AMD's technologies and bundled them together into a vast array of consumer computing

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

products such as smartphones, tablets, smart televisions, and even smart appliances. The "smart" label has been applied to consumer products that have the computing power of desktop and laptop computers but have a different form factor.

LGE's uses of AMD's technologies are extensive.  LGE needs AMD's technologies to meet market demands including the sleek, thin, light designs of today's smartphones and tablets, the extended battery life demanded by mobile device consumers, and the high-end graphics and gaming enjoyed in numerous consumer electronics devices.  This allows LGE to be a global leader in consumer electronics, home appliances, and mobile communications, and one of Asia's largest electronics companies with the second-largest Android mobile phone market share in the United States.  LGE is not a startup deserving of special protection from a business-to-business patent dispute in an Article III Court.

This dispute began long before AMD filed suit.  It has persisted for nearly two and a half years.  AMD and LGE first engaged in licensing discussions concerning AMD's patent portfolio of over 4,500 patents in July 2012.  (Fahrenkrog Decl. ¶ 4.[1])  This initial discussion included a presentation by AMD of a preliminary substantive analysis of LGE's infringement of 23 AMD patents.  (*Id.* ¶ 5.)  The presentation included eight of the nine AMD patents-in-suit, and the ninth patent is a continuation of one of those eight.  (*Id.*)

From July 2012 through 2013, the parties exchanged substantive responses and rebuttals to AMD's initial presentation (with several meetings in Seoul, South Korea), and in August 2013, LGE asserted 23 patents of its own against AMD.  (*Id.* ¶¶ 6,7.)  LGE knew about and developed invalidity arguments pre-suit for the majority of the AMD patents asserted in this litigation and now challenged before the PTAB.  (*Id.* ¶ 8.)  It asserted those positions in November 2012 and August 2013.  (*Id.*)  This was not a

---

[1] Citations to "Fahrenkrog Decl." refer to the Declaration of Aaron R. Fahrenkrog in Support of Plaintiffs' Opposition to Defendants' Motion to Stay, filed with this memorandum.

AMD'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY LITIGATION

litigation by ambush in which the defendant learned of the patents-in-suit for the first time upon the complaint's filing.

AMD continued into 2014 to try and negotiate a license for LGE to AMD's extensive portfolio, with those efforts including trips to LGE's headquarters in South Korea in September 2013 and February 2014.  (*Id.* ¶ 9.)  Unsuccessful, AMD filed suit on March 5, 2014.  (Dkt. #1.)  AMD agreed to postpone service until after a final face-to-face attempt to resolve the dispute in Washington, D.C., in May 2014.  (Dkt. #28.)  The complaint was served on LGE on May 12, 2014.  (Dkt. #31.)

The parties have invested heavily in this litigation since that time.  AMD's complaint asserts nine patents.  The asserted AMD patents cover an array of technologies pioneered by AMD in the late 1990s and early 2000s that improve the form, function, and user experience for today's consumer electronics.  These inventions include heat management techniques, power adjustment techniques that improve battery life, revolutionary innovations in graphics processing, and systems for increasing the speed of data transfer between computers and peripherals.  LGE then counterclaimed with four patents of its own covering power management and facial recognition technology.  (Dkt. #36.)

Not surprising given their extensive pre-suit discussions, the parties have exchanged a great deal of information in the litigation.  The parties have exchanged initial disclosures, requests for production, interrogatories, requests for admission, and Rule 30(b)(6) deposition topics.  (Fahrenkrog Decl. ¶¶ 22-24, 27-30.)  The parties have responded to interrogatories and hundreds of requests for admission, both with multiple supplements and amendments.  (*Id.* ¶¶ 23-26, 29, 30.)  The parties have produced hundreds of thousands of pages of documents, including highly confidential proprietary technical materials and detailed proprietary financial information.  (*Id.* ¶¶ 22, 28.)  The parties have exchanged thousands of pages of infringement and invalidity contentions pursuant to the Patent Local Rules.  (*Id.* ¶¶ 12-21.)  The parties have exchanged extensive claim construction disclosures, proposed constructions, and

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

supporting intrinsic and extrinsic evidence.  (*Id.* ¶¶ 35-37.)  The parties have participated

in a two-day Court-ordered private mediation.  (*Id.* ¶ 11.)  The parties have disclosed

many experts.  (*Id.* ¶¶ 33, 34.)  The work performed has been continuous and intense.

| Undertaking[2] | AMD | LGE |
|---|---|---|
| Patents Asserted | 9 | 4 |
| Claimed Technologies | <ul><li>Performance enhancement and heat management</li><li>Power management for functional blocks</li><li>Advanced graphics processing</li><li>Faster USB data transfer</li><li>Enhanced streaming video capabilities</li><li>Improved user interface for controlling video</li></ul> | <ul><li>Power management techniques for processors</li><li>Facial recognition technology</li></ul> |
| Patent Claims Originally Asserted | 58 | 20 |
| Patent Claims Currently Asserted | 45 | 20 |
| Accused Products Identified in Patent L.R. 3-1 Disclosures | 324 | 206 |

[2] The facts in this table are supported by the Fahrenkrog Declaration ¶¶ 12-37.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

| Undertaking[2] | AMD | LGE |
|---|---|---|
| Accused Product Categories | (1) Smart Phones<br>(2) Tablets<br>(3) Smart and non-Smart Televisions<br>(4) Blu-ray/DVD players<br>(5) Projectors<br>(6) Smart Appliances | (1) Multicore Desktop Processors<br>(2) Multicore Notebook and Tablet Processors<br>(3) Multicore Server Processors<br>(4) Multicore Embedded Processors<br>(5) All Tablets, Notebooks, Desktops, and Servers Including Multicore Processors Identified Above |
| Requests for Production Served | 256 | 201 |
| Document Production | 3,674 Documents<br>145,315 Pages | 2,898 Documents<br>286,567 Pages |
| Interrogatories Served | 6 | 18 |
| Responses to Interrogatories | AMD has twice amended its responses to LGE's interrogatories as additional factual information has been developed. | LGE has once amended its responses to AMD's interrogatories. |
| Requests for Admission Served | 311 | 36 |
| Responses to Requests for Admission | AMD has responded to each of LGE's requests for admission | Pursuant to multiple meet-and-confers, LGE has three times amended its responses to AMD's RFAs. |
| Rule 30(b)(6) Topics | 71 | — |
| Third Party Subpoenas Served | — | (1) Alcatel Lucent<br>(2) CyberLink Corporation<br>(3) Cypress Semiconductor<br>(4) Echostar |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

| Undertaking[2] | AMD | LGE |
|---|---|---|
| | | Communications |
| | | (5)  Epson, Inc. |
| | | (6)  Freescale Semiconductor |
| | | (7)  Intel Corporation |
| | | (8)  Intellectual Ventures |
| | | (9)  LongRun Technologies |
| | | (10)  Microchip Technology |
| | | (11)  Microsoft Corporation |
| | | (12)  National Technology |
| | | (13)  NVIDIA Corporation |
| | | (14)  Panasonic Corporation |
| | | (15)  Philips Electronics |
| | | (16)  Polycon, Inc. |
| | | (17)  Raytheon Company |
| | | (18)  Silicon Graphics |
| | | (19)  Sony Corporation |
| | | (20)  Sony Electronics |
| | | (21)  STMicroelectronics |
| | | (22)  Texas Instruments |
| | | (23)  TiVo Inc. |
| Disputed Terms Identified for Claim Construction (in Patent L.R. 4-1 disclosures) | 36 | 54 |
| Experts Disclosed | Andrew Wolfe<br>Marc Levitt<br>William Mangione-Smith<br>Steven Przybylski<br>Thomas Gafford<br>Carl Degen<br>Michael Wagner | Walter Gibson Overby<br>Donald Alpert<br>John S. Crockett<br>Anselmo A. Lastra<br>Robert Louis Stevenson<br>Andrew David Hospodor |

AMD'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY LITIGATION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

*LGE's petitions for IPR*

On December 10, LGE filed ten petitions for *inter partes* review (IPR) covering each of the asserted claims from each of AMD's nine asserted patents. AMD's patent owner responses will not be due until at least March 2015, after which the PTAB has three months, or until at least June 2015, to decide whether to institute a trial. 35 U.S.C. § 314(b). Then, the PTAB has twelve months to issue a final written decision, which can also be extended by up to an additional six months. 35 U.S.C. § 316(a)(11). This scenario would result in the IPRs concluding in December 2016, over four years after AMD first began negotiating with LGE, and over two and a half years after AMD filed the complaint in this Court. This assumes that the PTAB does not continue to slow down in its resolution of proceedings, which has been its trend. Appeal of the PTAB's decisions to the Federal Circuit will take even longer before AMD has its day in Court.

Staying the case will create the following estimated timeline for litigation and prohibit the parties from reaching resolution of the dispute any time soon—IPR events are identified in **bold**:

| | |
|---|---|
| July 2012 | AMD Initial Presentations to LGE Including 23 Patents |
| November 2012 | LGE Response to AMD's Presentation |
| April 2013 | AMD Rebuttal to LGE's Response |
| August 2013 | LGE Presentation Asserts 23 Patents Against AMD |
| September 2013 | AMD Travels to LGE Headquarters for Further Negotiations |
| February 2014 | AMD Again Travels to LGE Headquarters |
| March 5, 2014 | Complaint Filed; Service Withheld |
| May 12, 2014 | Final Face-to-Face Meeting, Washington D.C. |
| May 12, 2014 | Complaint Served on LGE asserting 9 Patents |
| June 16, 2014 | LGE Counterclaims Asserting 4 Patents |
| June-December 2014 | Continuous, Substantial Ongoing Discovery |
| August 1, 2014 | Infringement Contentions Served |

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

| October 1, 2014 | Invalidity Contentions Served |
| **December 10, 2014** | **LGE Files 10 IPR Petitions** |
| December 17, 2014 | LGE Moves to Stay |
| December 22, 2014 | Joint Claim Construction Statement Filed |
| January 19, 2015 | Claim Construction Discovery Cutoff |
| February 9, 2015 | Opening *Markman* Briefs |
| March 2, 2015 | Responsive *Markman* Briefs |
| **March 2015** | **AMD Preliminary Response to IPR** |
| March 16, 2015 | Reply *Markman* Briefs |
| March 24-25, 2015 | Claim Construction Tutorial |
| April 1-2, 2015 | *Markman* Hearing |
| April 2015 | Claim Construction Order (in the Court's Discretion) |
| **June 2015** | **PTAB Initial Order re: LGE's 10 IPR Petitions** |
| **September 2015** | **AMD Full Response to IPR Petitions** |
| **December 2015** | **LGE Reply in Support of Its IPR Petitions** |
| **January 2016** | **AMD Limited Reply re: IPR Petitions** |
| **June 2016** | **PTAB Final Decision (If No Extension)** |
| **December 2016** | **PTAB Final Decision (If Six-Month Extension)** |
| **December 2017** | **Resolution of IPR Appeal (Estimated)** |

*LGE's conduct since filing its motion to stay*

LGE has continued to make discovery demands of AMD since filing its motion to stay. LGE has requested inspections of source code made available by AMD and production of paper copies of many source code files. (Fahrenkrog Decl. ¶ 28.) LGE also has demanded that AMD produce proprietary materials relating to prior litigation and involving confidentiality obligations owed by AMD to a third party. (*Id.*) LGE's conduct reflects the reality that this case has progressed far beyond its initial stages and that the parties continue to invest heavily in all aspects of the case.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

**III.    MANY ASPECTS OF LGE'S SUPPORT FOR A STAY ARE WRONG.**

Before turning to the legal standard for evaluating whether to deny a stay, the Court should consider first that LGE's *factual* support for a stay includes many errors. The Court may deny LGE's stay request based on insufficient factual support.  LGE has not provided the Court with accurate information upon which to apply the legal standards.

LGE's factual support is wrong in at least the following six ways:

> ***Wrong***:  "Little discovery" has taken place in this case.  (Dkt. #78, LGE's Brief at 4-6, relying on cases in which "little discovery" had taken place as having "facts similar to those present here.")
>
> **Correct:**  The parties have exchanged initial disclosures, thousands of pages of contentions, written discovery requests and multiple amended responses, and hundreds of thousands of pages of documents, and LGE has taken extensive third-party discovery, as summarized above. (Fahrenkrog Decl. ¶¶ 22-34.)
>
>
> ***Wrong***:  Only "limited" written discovery has been exchanged.  (Dkt. #78, LGE's Brief at 1.)
>
> **Correct:**  Each party has served and responded to over 200 document requests.  The parties have served interrogatories and multiple responses relating to technical issues including conception and reduction to practice of the patents-in-suit, financial data for accused products, and non-infringement positions.  LGE has served multiple iterations of responses to 311 AMD requests for admission, describing technical details of the accused LGE products.  The parties have served thousands of pages of infringement contentions and invalidity contentions for the 13 patents-at-issue.  The parties have discussed this written discovery over the course of at least fifteen meet-and-confers.  (Fahrenkrog Decl. ¶¶ 23-26, 29, 30.)

1

2       ***Wrong***:  Only "some documents" have been produced.  (Dkt. #78, LGE's

3       Brief at 4.)

4       **Correct:**  AMD has produced 3,674 documents comprising 145,315 pages;

5       LGE has produced 2,898 documents comprising 286,567 pages.  This

6       material includes technical proprietary information describing the accused

7       products.  Both parties have produced source code for accused products,

8       although LGE has not completed its source code or technical document

9       production required by Patent Local Rule 3-4 (for which the deadline was

10      October 1, 2014), as discussed further below.  (Fahrenkrog Decl. ¶¶ 22, 28.)

11

12      ***Wrong***:  Fact depositions have not been scheduled or taken because "this

13      case is still in its infancy" and "discovery is still in its early stages"  (Dkt.

14      #78, LGE's Brief at 1, 4-5.)

15      **Correct:**  Fact depositions of LGE individuals or representatives have not

16      been scheduled or taken because LGE has failed to fulfill its obligations to

17      produce materials pursuant to Patent Local Rule 3-4.  AMD has cooperated

18      in good faith with LGE's delayed production in order to avoid unnecessary

19      disputes before the Court, even as LGE has forced AMD to the claim

20      construction process without producing critical technical materials.  LGE's

21      avoidance of fact depositions arose from its own discovery failures, not the

22      stage of the case.

23

24      ***Wrong***:  LGE knows the probability that any of its IPR petitions will be

25      instituted or will be successful in invalidating claims from AMD's patents.

26      (Dkt. #78, LGE's Brief at 6-8.)

27      **Correct:**  The statistics cited by LGE apply to the group of all IPR petitions

28      considered so far by the PTAB.  Group statistics cannot be applied to a

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

single case (a single IPR petition, or even a group of ten petitions) in any meaningful way.  Many patents challenged in the IPR process are held by non-practicing entities, which may hold weak patents or be treated differently because of their non-practicing status.  AMD is not an NPE.  In particular, LGE's calculation of the "probability of the PTO rejecting all ten IPR petitions" as "21.96% to the 10th power, i.e., $(0.2196)^{10}$" is incorrect because the percentage of petitions in the whole population denied by the PTAB cannot be applied, as matter of statistics, to any individual case.  In short, LGE cannot and does not know the probability that any of its petitions will be instituted or successful, and its use of "statistics" is misleading.

*Wrong*:  AMD will suffer no undue prejudice from a stay because any prejudice from delay can be "accounted for by additional damages."  (Dkt. #78, LGE's Brief at 9-10.)

**Correct:**  Any additional delay in LGE's payment of an appropriate royalty for its use of AMD's patents prejudices AMD by preventing AMD from investing that royalty back into its substantial research and development program to continue bringing the highest-performance computer systems and innovations to market.  It also causes undue prejudice to AMD because it allows for LGE's unilateral derailment of AMD's chosen forum and timing for resolution of this dispute.  Neither damages nor prejudgment interest will account for this prejudice that harms AMD in its ongoing business in a competitive marketplace.

A party should not receive its requested relief when its motion relies so heavily on factual errors.  The Court should deny the stay based on LGE's factual misrepresentations.

**IV.    THE COURT SHOULD DENY LGE'S MOTION TO STAY.**

The Court is under "no obligation to delay its own proceedings where parallel litigation is pending before the PTAB." *Aylus Networks, Inc. v. Apple Inc.*, No. 13-cv-4700-EMC, 2014 U.S. Dist. LEXIS 157228, at *2 (N.D. Cal. Nov. 6, 2014) (quotations omitted). "There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule 'would invite parties to unilaterally derail' litigation." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, No. 12-cv-05501-SI, 2014 U.S. Dist. LEXIS 4025, at *4 (N.D. Cal. Jan. 13, 2014) (quoting *ESCO Corp. v. Berkeley Forge & Tool, Inc.*, No. 09-cv-1635, 2009 U.S. Dist. LEXIS 94017, at *5 (N.D. Cal. Sept. 28, 2009)).

This Court considers three significant factors when evaluating whether to grant a stay; none weigh in favor of a stay here: (1) the stage of the litigation, including the extent to which discovery and claim construction have been undertaken; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *Id.* at *4.  The Court also may look beyond these factors to "the totality of the circumstances," *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, 943 F. Supp. 2d 1028, 1031 (N.D. Cal. 2013) (quotation omitted); this also weighs against a stay.  The Court finally may consider its "ability to control its docket to ensure that cases are managed in the interest of justice," *id.* at 1035; justice demands that this litigation proceed when LGE's stay request is viewed in the context of its discovery failures and violations of this Court's Patent Local Rules.

**A.    Factor 1:  The Stage of Litigation Supports Denying a Stay Because the Parties Have Exchanged Significant Fact Discovery and Have Undertaken Claim Construction Efforts Across All Thirteen Asserted Patents.**

This case is not in the early stages of litigation.  Rather, significant substantive fact discovery and claim construction work has occurred and is ongoing—the numbers are described in the table above.  Additional context further demonstrates the heavy

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1   investment the parties have made in this case that should not be interrupted abruptly by

2   an unjustified stay.

3       The parties have not idly exchanged discovery requests and responses.  They also

4   have participated in a regularly scheduled discovery call on nearly a weekly basis to

5   discuss all outstanding discovery issues and move them forward.  (Fahrenkrog Decl.

6   ¶ 32.)  The parties have discussed and resolved myriad issues through these calls.  An

7   example of the parties' discovery efforts advanced through this process is LGE's

8   responses to AMD's requests for admission.  AMD served over 300 RFAs on LGE

9   relating to technical characteristics of LGE's products accused of infringement.  (*Id.*

10   ¶ 24.)  LGE first answered all the RFAs with objections and denials.  (*Id.*)  AMD

11   challenged these denials through the weekly meet-and-confer process; LGE has since

12   amended its responses three times.  (*Id.* ¶¶ 24-28.)  First, it modified its denials to state

13   that many of the requested admissions "may" be true.  (*Id.* ¶ 24.)  After further challenge

14   by AMD that a fact "may" be true is not a response allowed under Rule 36, LGE has

15   modified its responses twice more to admit over 100 facts about the accused products.

16   (*Id.* ¶¶ 25-26.)

17       The Court likely will finish claim construction before the PTAB makes any

18   decision to grant LGE's petitions.  The parties already have filed their joint claim

19   construction statement.  (Dkt. #81.)  Briefing will be complete on March 16, 2015.  (Dkt.

20   #55.)  A technology tutorial is scheduled for March 25 and 26, with the *Markman* hearing

21   set for April 1-2, 2015.  (*Id.*)  At the case management conference on July 18, 2014, the

22   Court indicated that, in its discretion, it will attempt to issue its claim construction order

23   before the case management conference on April 24, 2015.  The PTAB will not institute

24   any of LGE's IPRs likely until June 2015.  At that point, the case status alone should

25   preclude a stay.  The uncertain speculation that the PTAB *might* grant LGE's petitions

26   should not change this result merely because LGE chose to file its motion at this time.

27       The Court has denied motions to stay in cases with similar circumstances.  For

28   example, the Court denied a motion to stay in *Ariosa Diagnostics, Inc. v. Sequenom, Inc.,*

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1   where the case was "on the cusp of claim construction" and where "significant discovery

2   ha[d] been already taken."  No. 11-cv-6391-SI, 2013 U.S. Dist. LEXIS 189033, at *9 (N.D.

3   Cal. June 11, 2013).  This Court also denied a stay in the *Verinata* case where discovery

4   was "well underway with the parties having exchanged initial disclosures, infringement

5   and invalidity contentions, and some document productions."  2014 U.S. Dist. LEXIS

6   4025, at *5.  The Court denied a stay in *Aylus Networks* where the parties had "conducted

7   considerable discovery and briefed the claim construction."  2014 U.S. Dist. LEXIS

8   157228, at *3.  The first factor weighs against a stay.

9

> **B.    Factor 2:  A Stay Will Not Simplify or Streamline Issues for Trial Because the PTAB Has Not Instituted Any of LGE's Petitions and the Possibility of Narrowing Issues Is Speculative Only.**

10

11          A stay will not help streamline the issues in this case because the PTAB has not

12   yet granted any petition for IPR of any AMD patent.  The possibility of narrowing the

13   issues is only speculative.  "[I]n most cases, the filing of an IPR request by itself does not

14   simplify the issues in question and trial of the case."  *TPK Touch Solutions, Inc. v. Wintek*

15   *Electro-Optics Corp.*, No. 13-cv-02218-JST, 2013 U.S. Dist. LEXIS 162521, at *11 (N.D. Cal.

16   Nov. 13, 2013); *see also Aylus Networks,* 2014 U.S. Dist. LEXIS 157228, at *3-4 (explaining

17   that absent the PTAB granting petitions for review, the second factor does not support a

18   stay).

19          Federal Circuit Judge Bryson, sitting by designation, recently explained that

20   "[t]he most important—indeed, the *dispositive*—factor bearing on the Court's exercise of

21   its discretion [to deny the motion to stay] in this case is that the PTAB has not yet acted

22   on [the defendant's] petition for *inter partes* review."  *Freeny v. Apple Inc.*, No. 13-cv-

23   00361-WCB, 2014 U.S. Dist. LEXIS 99595, at *4 (E.D. Tex. July 22, 2014) (emphasis

24   added).  Indeed, "the majority of courts that have addressed the issue have postponed

25   ruling on stay requests or have denied stay requests when the PTAB has not yet acted on

26   the petition for review."  *Id.* at *5 (citing district court cases).

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

Accordingly, the Court recently has denied motions to stay in multiple cases where the PTAB had not yet ruled on a defendant's IPR petitions. *See, e.g.*, *IpLearn-Focus, LLC v. Microsoft Corp.*, No. 14-cv-00151-JD, Dkt. #65 (N.D. Cal. Dec. 12, 2014) ("After carefully considering the parties' arguments and briefing, and largely because the Patent Trial and Appeal Board has not instituted inter partes review, the Court denies the motion to stay."); *Netlist, Inc. v. Smart Storage Sys., Inc.*, No. 13-cv-5889-YGR, 2014 U.S. Dist. LEXIS 116979, at *10 (N.D. Cal. Aug. 21, 2014) (denying stay because "the mere filing of a petition for *inter partes* review tells the Court little about whether such a decision [by the PTAB] is likely"); *Aylus Networks*, 2014 U.S. Dist. LEXIS 157228, at *4 ("Because none of the factors weigh in favor of granting a stay, and because the PTAB's decision on Apple's IPR petitions is not expected until nearly eighteen months after Aylus filed this action, the Court DENIES Apple's motion for a pre-institution stay of these proceedings.").

Here, the PTAB is six months away from deciding whether to institute proceedings on LGE's petitions. AMD has until March 2015 to submit its preliminary responses to LGE's ten petitions. Following receipt of AMD's responses, the PTAB then has another three months, until June 2015, to decide whether to institute proceedings. 35 U.S.C. § 314(b). There is no certainty that IPR proceedings will simplify this litigation, and a significant likelihood that the proceedings will not simplify this case at all.

      1.     The number of patents at issue minimizes the probability of significant simplification.

AMD has asserted nine patents and expects to establish damages in the hundreds of millions of dollars even if only a portion of its asserted claims emerge from the IPR process. Staying the case, therefore, will not simplify the litigation. This Court has noted that staying a case involving even just three (3) patents under review "is not nearly as likely to significantly simplify . . . litigation as much as stays issued in . . . single patent cases." *Verinata,* 2014 U.S. Dist. LEXIS 4025, at *9 (explaining further that "complaints involving multiple patents are less likely to be resolved by a PTO decision")

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

(quoting *Network Appliance Inc. v. Sun Microsystems Inc.*, No. 07-cv-06053-EDL, 2008 U.S. Dist. LEXIS 76717, at *9-10 (N.D. Cal. May 23, 2008)).

LGE is wrong that there is a "99.9999% chance that the PTAB will institute an IPR on at least one of AMD's patents." (Dkt. #78 at 7.) Every IPR petition depends on its own merits and is totally distinct from every IPR petition that has come before it. LGE's probability analysis is pure fallacy. The IPR "statistics" cited by LGE are meaningless for predicting whether the petitions at issue here will be granted.[3] Instead, they merely tabulate what the PTAB has done in the past with entirely different patent claims and prior art. LGE says it is "confident" that all its petitions will be instituted; AMD is confident that none will be instituted. AMD makes this point only to illustrate the hollowness of LGE's purely speculative arguments.

2.      Judicial economy will not benefit even if the PTAB institutes IPR proceedings.

LGE has asserted a variety of invalidity positions in this litigation. Some of those positions overlap with the assertions in its IPR petitions, but many positions do not. Thus, the estoppel provisions of the IPR laws likely will offer little benefit to this Court in terms of conservation of judicial resources.

First, the PTAB considers only documentary prior art defenses, and does not consider the invalidity defenses of indefiniteness, written description, and enablement. This is not trivial, because in its invalidity contentions LGE has asserted 44 indefiniteness defenses, 16 enablement defenses, and 22 written description defenses, all of which LGE likely will attempt to argue to this Court regardless of the PTAB's determinations. (Fahrenkrog Decl. ¶ 20.)

Second, even if LGE's prior art invalidity theories under § 102 or § 103 fail at the PTAB, LGE likely will argue that it may pursue nearly identical theories in this litigation

---

[3] If anything, LGE's cited statistics demonstrate that the chance of this matter fully resolving through IPR proceedings is virtually zero, as 33% of claims challenged before the PTAB have been found patentable. (Dkt. #78-13, Barnes Decl. Ex. 12.)

- 17 -          AMD'S OPPOSITION TO DEFENDANTS' MOTION TO STAY LITIGATION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

based on physical devices allegedly embodying the documentary prior art it has asserted in the PTAB.  The PTAB may consider prior art consisting of only patents and printed publications.  35 U.S.C. § 311(b).  The PTAB proceedings do not cover anticipation or obviousness arguments based on prior art *devices*.  *Id.*  Thus, in direct contradiction of LGE's representations about streamlining, its invalidity arguments likely will *duplicate* efforts between the PTAB and the Court because LGE has attempted to create a scenario where it gets multiple bites at the same invalidity apple.

For example, LGE's IPR petition for AMD's Loyer '715 patent asserts three grounds of invalidity under § 103.  (Dkt. #78-10, Barnes Decl. Ex. 9, at ECF p. 19.)  The grounds are based on a technical specification, a user's manual, and another technical specification, each of which LGE asserts to be printed publications.  (*Id*. at 20, 32, 46.)  In this litigation, LGE has asserted as prior art both the publications and physical devices allegedly embodying the three publications.  (Fahrenkrog Decl. Ex. A at 117-18 (excerpts from LGE's Patent L.R. 3-3 disclosures).)  If LGE does not succeed in its IPR challenges, it likely will argue later in this litigation that it is not estopped from asserting the devices as prior art because it could not have raised those devices at the PTAB.  AMD may dispute this position, but in any event invalidity arguments similar to those addressed at the PTAB will be back before this Court for review.  LGE has created the same dual-track situation—assertions of publications in the PTAB and devices allegedly embodying those publications in litigation—also for AMD's Morein '871, Morein '369, Lefebvre '053, Tran '849, and Kovacevic '945 patents.  (Fahrenkrog Decl. ¶ 21.)

Accordingly, even if the PTAB finds that LGE failed to prove any claim from AMD's patents is invalid based on the asserted publications, such a finding would do little to streamline this case because LGE likely will simply continue arguing invalidity based on the corresponding devices in addition to raising its § 112 defenses.  The second factor weighs against a stay.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.      Factor 3:  A Stay Will Cause Undue Prejudice and Impose a Tactical Disadvantage Upon AMD.**

Staying the case will cause undue prejudice to AMD because it will delay AMD's recovery of any royalty to which it is entitled, which AMD would invest into its business, until years after this litigation would otherwise resolve.  *See Aylus Networks*, 2014 U.S. Dist. LEXIS 157228, at \*4 (denying motion to stay and finding plaintiff's contention that "staying these proceedings will cause further expense and delay, and will prejudice them regardless of whether the petition is granted or denied" to "have merit").  A stay also would cause undue prejudice to AMD by denying AMD its choice to bring the dispute before this Court at the time of its choosing.  A stay would cause a tactical disadvantage to AMD for the same reasons—it allows the defendant, LGE, to select the forum and timeline for which a first round of invalidity disputes will be litigated.  Thus, "a stay would unduly prejudice [and] present a clear tactical disadvantage to the non-moving party," AMD.  *Verinata*, 2014 U.S. Dist. LEXIS 4025, at \*9.

Further, LGE's argument that AMD's failure to move for a preliminary injunction supports granting a stay has been squarely rejected by this Court.  *See Verinata*, 2014 U.S. Dist. LEXIS 4025, at \*11 ("Ariosa argues that a finding of undue prejudice is undercut by Verinata's failure to file for a preliminary injunction.  However, several courts have rejected this argument, noting that '[a] party may decide to forgo seeking a preliminary injunction for a variety of reasons having nothing to do with its view of the merits.' . . . The Court agrees with those decisions.").

The timing of LGE's petitions for IPR and request for a stay demonstrate the tactical advantage LGE will obtain if the Court grants a stay.  LGE chose to file its petitions at a time such that the Court likely would complete claim construction before the PTAB decided to institute any IPR proceedings.  LGE waited to file its petitions until after AMD took claim construction positions on over 50 claim terms put in issue by LGE pursuant to Patent L.R. 4-2.  LGE filed its motion to stay so it would not be resolved

1    until after the parties filed their Patent L.R. 4-3 joint claim construction statement and

2    possibly not until after the parties file at least opening claim construction briefs.

3        LGE has demonstrated its intent to rely on certain AMD claim construction

4    positions in its IPRs.  (Dkt. #78-4, Barnes Decl. Ex. 3, at ECF p. 14 (relying on AMD's

5    preliminary construction); Dkt. #78-5, Barnes Decl. Ex. 4, at ECF p. 5 (citing AMD's Rule

6    4-2 disclosures for support).)  If the Court grants a stay now, LGE will have used this

7    Court's claim construction procedures to elicit AMD's positions for LGE's tactical

8    advantage while denying AMD the opportunity to litigate those positions—and their

9    impact in later stages of the case—in this Court.  LGE's attempt to create a tactical

10   disadvantage for AMD is clear, and combined with its failures to comply with others of

11   the Court's Patent Local Rules, discussed below, LGE's tactics justify denial of a stay.

12   This Court's Local Rules are not a toolkit for a defendant to manipulate to best set up its

13   positions in another forum and stall a plaintiff's choice of this forum.

14       If LGE truly believes in its invalidity positions—and is not merely seeking a

15   tactical advantage—it could have filed its IPR petitions much earlier, before the parties

16   engaged in significant disclosures, discovery, and claim construction.  It could have filed

17   the petitions at a time that would have allowed the PTAB to make its institution

18   decisions before the Court completed claim construction proceedings.  It could have

19   filed the petitions at a time that would have allowed for resolution of the IPR

20   proceedings before this case would likely finish with trial.  LGE chose not to file at such

21   a time; the Court should consider this delay and deny a stay.  *See Asetek Holdings, Inc. v.*

22   *Cooler Master Co.*, No. 13-cv-457, 2014 U.S. Dist. LEXIS 47134, at *14-19 (N.D. Cal. Apr. 3,

23   2014) (identifying additional factors to consider, including the timing of the IPR request).

24       **D.    LGE's Dilatory Tactics and Non-Compliance with This Court's**
            **Procedures Justify Denying a Stay.**

25       The Court considers the factors above within "the totality of the circumstances."

26   *Universal Elecs.*, 943 F. Supp. 2d at 1035.  Here, the "circumstances" are that LGE's

27

28

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

(inaccurate) descriptions of the state of progress in this case are self-made based on a violation of the Patent Local Rules.

LGE has failed to meet its obligations to produce technical materials under Patent L.R. 3-4. Its delay now has emerged as a tactic for arguing that discovery is in its "early stages" to support a stay. Thus, justice, equity, and the Court's obligation "to secure the just, speedy, and inexpensive determination of every action," Fed. R. Civ. P. 1, demand that the Court deny LGE's request that the Court allow parallel litigation in a different forum to hijack AMD's choice of forum and timing for litigating this dispute.

LGE has not produced documents and code sufficient to show the operation of the aspects of the accused products identified in AMD's infringement contentions. It has not produced nearly all of the source code for each accused product, and it has not produced any documents that contain third-party proprietary information. (Fahrenkrog Decl. ¶ 22.) The deadline for this production, agreed upon by the parties in the case management statement (Dkt. #52) and adopted by the Court (Dkt. #55), was October 1. LGE's reason for not finishing its source code production, even by the end of December: collection is slow.[4] Its reason for not producing third-party technical information: uncertainty about the protective order, currently pending before the Court (Dkt. #70).

Neither reason is sufficient. LGE never requested relief from the Court to delay its Rule 3-4 production. The Rule makes no exceptions for difficulty of collecting and producing code.[5] As for the protective order, if LGE or its third-party partners have a

---

[4] AMD's counsel asked LGE's counsel on December 29, 2014, when LGE would complete its source code production. LGE's counsel responded that LGE had no answer and no update. (Fahrenkrog Decl. ¶ 22.)

[5] LGE likely will contend that it complied with the source code production required by Patent L.R. 3-4(a) because it produced code for all products "charted" by AMD. This is disingenuous. AMD served claim charts and a detailed technical basis explaining why each chart applied to all listed accused instrumentalities. Thus, all accused products are in AMD's "chart" for purposes of Patent L.R. 3-1(c) and 3-4(a). LGE never challenged AMD's contentions—nor would it agree that the code it produced adequately represented all accused products. It would not agree to even discuss AMD's exemplar

AMD'S OPPOSITION TO DEFENDANTS'
MOTION TO STAY LITIGATION

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

concern about how the Court might resolve the outstanding items, they should have filed a separate motion for protective order to prevent AMD's in-house counsel from having access to certain material even if AMD wins the general dispute.  Further, the parties have agreed that in-house counsel will not have access to source code, so the protective order dispute provides no basis for LGE to withhold production of relevant third-party source code.  In good faith, AMD even offered a compromise that would allow these third parties time to file additional motions for protective order after the Court resolves the currently pending dispute; LGE has refused to accept that compromise and instead has continued to withhold documents.

Now it is apparent that this is a delay tactic intended to prejudice AMD's claim construction preparation, benefit LGE's IPR preparation, and support LGE's motion to stay the case pending IPR.  AMD has not had the opportunity to review information critical to its infringement case prior to claim construction.  LGE, on the other hand, proposed myriad terms from AMD's patents for construction, forcing AMD to set forth constructions under Patent L.R. 4-2.  LGE then cited certain AMD preliminary constructions in LGE's IPR filings.  (Dkt. #78-4, Barnes Decl. Ex. 3, at ECF p. 14 (relying on AMD's preliminary construction); Dkt. #78-5, Barnes Decl. Ex. 4, at ECF p. 5 (citing AMD's Rule 4-2 disclosures for support).)  LGE's violation of Rule 3-4 also has prejudiced AMD's discovery efforts, preventing AMD from beginning technical deposition discovery.  LGE now cites this prejudicial impact as a reason to stay the case.

AMD also did not seek relief, but instead attempted to give LGE the benefit of the doubt for its delays, in accordance with the Court's Guidelines for Professional Conduct.  The Guidelines at § 4 provide that "a lawyer should agree to reasonable requests for extensions of time when the legitimate interests of his or her client will not be adversely affected."  If the Court grants LGE's motion to stay based on LGE's arguments about the

---

proposal, raised by AMD in June, that would ease LGE's discovery obligations.  Instead, it said it would produce code for all accused products instead of discussing exemplars.  It has failed to satisfy this obligation.  (Fahrenkrog Decl. ¶¶ 14, 15, 22.)

Case No. 3:14-cv-1012-SI                          - 22 -                          AMD'S OPPOSITION TO DEFENDANTS'
                                                                                MOTION TO STAY LITIGATION

1   allegedly "early" stage of discovery, then AMD's counsel's good-faith effort to

2   accommodate LGE's delays will immediately adversely impact AMD, and AMD cannot

3   go back in time and seek relief.

4          AMD has attempted to reduce the amount of documents LGE had to produce.

5   First, AMD proposed an exemplar stipulation in June 2014 that would have allowed

6   LGE to produce technical materials for only representative accused products.

7   (Fahrenkrog Decl. ¶ 14; Dkt. #52 at 12.)  LGE has flatly refused to engage in an exemplar

8   discussion despite its agreement in the joint case management statement to "meet and

9   confer in good faith on the issue of representative products after the exchange of

10  contentions and during the course of fact discovery."  (*Id.*; Dkt. #52 at 12.)  Also in June

11  2014, AMD created a "product list" table identifying every LGE accused product at issue

12  and requested that LGE fill in basic technical characteristics of each product to simplify

13  the parties' discovery relating to LGE's products.  (Fahrenkrog Decl. ¶ 15.)  Again, LGE

14  has refused to respond at all or engage with AMD on completion of that list.  (*Id.*)

15  Instead, LGE has simply delayed discovery.

16         LGE's delay tactics indicate that its motion to stay is part of a broader strategy to

17  use this Court's claim construction rules to benefit its case in front of the PTAB while

18  violating others of the Court's rules and attempting to deny AMD's right to have its case

19  heard before an Article III Court at the time of AMD's choosing.  A speculative

20  conservation of resources—which likely will not occur—should not outweigh the

21  prejudicial impact on AMD, especially in view of LGE's obvious attempts to deliberately

22  inflict that prejudice and create its own tactical advantage.  This litigation should

23  proceed in full and in parallel with the IPR proceedings, if any are instituted.

24         One additional consideration AMD respectfully commends to the Court.  The

25  current litigation includes nine AMD patents; AMD's portfolio contains over 4,500.

26  Invalidation of the nine patents in IPR will not end the parties' dispute.  As LGE

27  continues to sell computer systems branded as "smartphones" or "smart TVs," it will

28  continue to need AMD's computer system patents developed well before LGE's move

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

1    into this market.  The parties already have participated in private mediation once.

2    Decisions made by this Court will impact how the parties evaluate their settlement

3    positions to resolve this business-to-business dispute.  This forum is the proper one for

4    determining the strength of the parties' positions and driving full resolution.  The Court

5    can best conserve judicial resources as a whole by proceeding with the current litigation.

6    **V.**    **CONCLUSION**

7            At the initial case management conference, counsel for LGE referred to this

8    litigation as a "big case."  It is big.  It is important to AMD.  AMD selected this forum to

9    resolve this big case and selected the time it would file suit.  AMD requests that the

10    Court hear this case and not allow LGE to divert the litigation to a different forum for

11    years, depriving AMD of its access to this Article III Court.  AMD respectfully requests

12    that the Court deny LGE's motion to stay the litigation.

ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
ATTORNEYS AT LAW
MINNEAPOLIS

DATED: December 31, 2014          **ROBINS, KAPLAN, MILLER & CIRESI L.L.P.**

By:  /s/ *William H. Manning*

WILLIAM H. MANNING (*pro hac vice*)
E-mail: WHManning@rkmc.com
AARON R. FAHRENKROG (*pro hac vice*)
E-mail: ARFahrenkrog@rkmc.com
LOGAN J. DREW (*pro hac vice*)
E-mail: LJDrew@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402–2015
Telephone:   612–349–8500
Facsimile:    612–339–4181

J. SCOTT CULPEPPER (*pro hac vice*)
E-mail: JSCulpepper@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
One Atlantic Center
1201 West Peachtree St., Suite 2200
Atlanta, GA 30309–3453
Telephone:   404–760–4300
Facsimile:    404–233–1267

DAVID MARTINEZ, Bar No. 193183
DMartinez@rkmc.com
ROBINS, KAPLAN, MILLER & CIRESI L.L.P.
2049 Century Park East, Suite 3400
Los Angeles, CA 90067–3208
Telephone:   310-552-0130
Facsimile:    310-229–5800

Attorneys for Plaintiffs
ADVANCED MICRO DEVICES, INC.
and ATI TECHNOLOGIES ULC