UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ADVANCED MICRO DEVICES, INC., et al.,

   Plaintiffs,

  v.

LG ELECTRONICS, INC., et al.,

   Defendants.

Case No.  14-cv-01012-SI

**ORDER ON PLAINTIFFS' MOTION FOR LEAVE TO AMEND INFRINGEMENT CONTENTIONS**

Re: Dkt. No. 128

Before the Court is plaintiffs' motion for leave to amend their infringement contentions. Dkt. No. 128.  The Court held a hearing on February 17, 2017.  After careful consideration of papers submitted, the Court hereby GRANTS plaintiffs' motion.

## BACKGROUND

Plaintiffs Advanced Micro Devices, Inc. and subsidiary ATI Technologies ULC (collectively, "AMD" or "plaintiffs") filed this patent infringement suit on March 5, 2014.  In the complaint, plaintiffs accused defendants LG Electronics, Inc., LG Electronics U.S.A., Inc., and LG Electronics Mobilecomm U.S.A., Inc. (collectively, "LG" or "defendants") of infringing nine AMD patents.[1]  Compl. (Dkt. No. 1).  LG brought several counterclaims, asserting, among other

---

[1] U.S. Patent Nos. 6,889,332 ("Helms '332"), 6,895,520 ("Altmejd '520"), 6,897,871 ("Morein '871"), 7,327,369 ("Morein '369"), 7,742,053 ("Lefebvre '053"), 5,898,849 ("Tran '849"), 6,266,715 ("Loyer '715"), 6,784,879 ("Orr '879"), and 7,095,945 ("Kovacevic '945"). Following *inter partes* review, the PTO invalidated all asserted claims of Lefebvre '053, Morein '369, and Altmejd '520, and one or more asserted claims of Morein '871 and Kovacevic '945.  *See* Final Written Decisions, Dkt. Nos. 107-7, 107-8, 107-9, 107-10, 107-11.  The corresponding legal claims have been dismissed.  *See* Dkt. Nos. 124, 138.

things, that AMD infringes on four LG patents.[2]

On August 1, 2014, plaintiffs served defendants with Patent Local Rule 3-1 asserted claims and infringement contentions.  In February 2015, plaintiffs filed a motion for leave to amend the infringement contentions, but the Court denied plaintiffs' motion without prejudice and stayed the case.  Dkt. No. 99.  Approximately 18 months later, on August 19, 2016, the Court lifted the stay and set a *Markman* hearing.  Dkt. No. 112.  The Court has not yet set deadlines for close of discovery or a trial date.

Plaintiffs now seek the Court's leave to amend their August 2014 infringement contentions by adding approximately 500 unique accused products and 21 exemplar claim charts.

## LEGAL STANDARD

Patent Local Rule 3-6 provides,

> Amendment of the Infringement Contentions or the Invalidity Contentions may be made only by order of the Court upon a timely showing of good cause.  Non-exhaustive examples of circumstances that may, absent undue prejudice to the non-moving party, support a finding of good cause include:
>
> (a)  A claim construction by the Court different from that proposed by the party seeking amendment;
>
> (b)  Recent discovery of material, prior art despite earlier diligent search; and
>
> (c)  Recent discovery of nonpublic information about the Accused Instrumentality which was not discovered, despite diligent efforts, before the service of the Infringement Contentions.

N.D. Cal. Patent L.R. 3-6.

"The local patent rules in the Northern District of California . . . requir[e] both the plaintiff and the defendant in patent cases to provide early notice of their infringement and invalidity contentions, and to proceed with diligence in amending those contentions when new information

---

[2] U.S. Patent Nos. 6,639,998 (the "'998 Patent"), 7,636,863 (the "'863 Patent"), 7,664,971 (the "'971 Patent"), and RE43,184 (the "'184 Patent").  Two of LG's asserted patents underwent *inter partes* review, which resulted in the invalidation of all asserted claims of the '971 Patent and some of the asserted claims of the '863 Patent.  The parties dismissed their corresponding legal claims accordingly.  *See* Dkt. No. 138.

comes to light in the course of discovery.  The rules thus seek to balance the right to develop new information in discovery with the need for certainty as to the legal theories." *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1365–66 (Fed. Cir. 2006).  In contrast to the more liberal policy for amending pleadings, "the philosophy behind amending claim charts is decidedly conservative, and designed to prevent the 'shifting sands' approach to claim construction." *LG Elecs. Inc. v. Q–Lity Computer Inc.*, 211 F.R.D. 360, 367 (N.D. Cal. 2002) (citation omitted).

The moving party bears the burden of establishing diligence.  *O2 Micro*, 467 F.3d at 1355.  Where the moving party is unable to show diligence, there is "no need to consider the question of prejudice," although a court in its discretion may elect to do so.  *See id*. at 1368 (affirming district court's denial of leave to amend upon finding the moving party was not diligent, without considering the question of prejudice to the non-moving party).  "If the court finds that the moving party has acted with diligence, it must then determine whether the nonmoving party would suffer prejudice if the motion to amend were granted." *Apple Inc. v. Samsung Elecs. Co. Ltd*, No. 12-cv-0630-LHK (PSG), 2013 WL 3246094, at *1 (N.D. Cal. June 26, 2013) (internal quotation marks omitted).  "Prejudice is typically found when amending contentions stand to disrupt the case schedule or other court orders." *Karl Storz Endoscopy-Am. v. Stryker Corp.*, No. 14-0876-RS (JSC), 2016 U.S. Dist. LEXIS 176876, at *8 (N.D. Cal. Dec. 21, 2016).  "Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery." *Id*. (citation and internal quotation marks omitted).

## DISCUSSION

Plaintiffs seek leave to amend their infringement contentions to: (1) accuse 52 products previously included in plaintiffs' February 2015 motion for leave to amend; (2) accuse two products under the contentions for Morein '871, which products are already accused under two other patents in this case; (3) accuse products that were released "or disclosed" by LG after the litigation was stayed; and (4) "correct certain non-substantive typographical errors and formatting

United States District Court
Northern District of California

issues . . . ." Mot. (Dkt. No. 128) at 2.[3]  With these proposed amendments, plaintiffs would expand their total unique accused products in this litigation from 327 to 821 and the number of representative claim charts from 52 to 73.  Mot. (Dkt. No. 128) at 7; *see* Decl. Fahrenkrog (Dkt. No. 129) ¶ 32.  While many of the new products are simply tied to preexisting exemplar product charts, Decl. Fahrenkrog ¶ 33, others required charting new exemplar products.  *Id.* ¶ 34.  The new charts, however, purportedly "fall within similar, if not identical, infringement theories for the already-asserted claims of" AMD's patents.  *Id.*

A plaintiff may amend its infringement contentions "upon a timely showing of good cause."  N.D. Cal. Patent L.R. 3-6.  To demonstrate good cause, the party seeking leave must make a showing that it "acted with diligence in promptly moving to amend when new evidence is revealed in discovery."  *O2 Micro*, 467 F.3d at 1363. "If the moving party is able to establish diligence, the Court should then consider prejudice to the non-moving party in determining whether to grant leave to amend."  *Verinata Health, Inc. v. Sequenom, Inc.*, No. 12-0865-SI, 2014 WL 789197, at *1 (N.D. Cal. Feb. 26, 2014).

The Court will first determine whether AMD has made a sufficient showing of diligence in seeking leave to amend.

## I.     Plaintiffs' Diligence

Plaintiffs must demonstrate that they were diligent in seeking leave to amend their infringement contentions.  The diligence required for a showing of good cause has two prongs: (1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered.  *See Yodlee, Inc. v. CashEdge Inc.*, No. 05-1550-SI, 2007 WL 1454259, at *3 (N.D. Cal. May 17, 2007).  "Diligence is a fact intensive inquiry, and courts do not apply a mechanical rule in assessing a party's diligence but instead consider the factual circumstances in total."  *Word to Info Inc. v. Facebook Inc.*, No. 15-cv-3485-WHO, 2016 WL 6276956, at *6 (N.D. Cal. Oct. 27, 2016), *appeal docketed*, No. 17-1431 (Fed.

---

[3] Unless otherwise noted, pinpoint citations are to ECF-generated page numbers.

Cir. filed Dec. 29, 2016).

With respect to investigation, AMD describes a labor-intensive analysis, whereby it worked with public sources and cross-checked those sources against information from LG to most accurately supplement the infringement contentions.  Mot. at 10-11.  According to AMD, the process began again in earnest shortly after the Court lifted the stay in this case.  AMD states that it contacted LG once the stay was lifted and sought to establish a plan for amending its infringement contentions.  The parties exchanged several communications between September and November 2016, culminating with AMD serving LG with the updated contentions, including 20 new infringement charts, on November 30, 2016.[4]  *Id.* at 11; *see* Decl. Fahrenkrog, Exs. 4-13.  Thirty days later, having received "no substantive response," AMD filed this motion.  Mot. at 12.

LG argues that if AMD had been diligent, AMD "could . . . have served its amended contentions and new claim charts the day that the stay was lifted . . . ."  Opp'n (Dkt. No. 137) at 10.  LG argues that, rather than using the stay period to gather publicly-available information, "AMD apparently waited until the Court lifted the stay to begin investigating LG's intervening product releases."  *Id.* at 11.  LG argues that AMD "has known that it wanted to amend its Infringement Contentions since it served its original contentions approximately two and a half years ago," and that AMD was not diligent by waiting six months to seek leave to amend the first time, and then nearly five more months after the stay was lifted to file its "renewed" motion for leave to amend.  *Id.* at 13-14.

The Court finds that AMD was sufficiently diligent in investigating its claims and in filing its motion to amend the infringement contentions.  The Court disagrees with LG's position that AMD should have continued its thorough product investigations and preparation of updated infringement contentions during the stay of this litigation.  Continuing to work diligently on stayed proceedings would have been a waste of time and resources.[5]  Moreover, AMD relied on

---

[4] Plaintiffs submitted an additional claim chart, for a total of 21, with this motion.  Mot. at 11.

[5] In fact, *inter partes* review resulted in the invalidation of several of AMD's asserted claims in this case.

United States District Court
Northern District of California

United States District Court
Northern District of California

cooperation from LG in preparing its amended infringement contentions, at least to confirm which products LG sold within the United States – LG might have been reluctant to cooperate during the stay.  LG asked the Court to stay this litigation two years ago so the parties could focus resources elsewhere and streamline this case; LG may not now suggest that AMD should have been pushing ahead with expanding its infringement theories during the stay.

The Court understands that LG releases numerous products each year, and it is difficult to track the release dates of less significant or discontinued products – as well as whether those products were sold in the United States – using only public sources.  AMD's analysis of public sources, such as LG's consumer-facing websites, LG's OpenSource code distribution website, third-party websites, user guides, service manuals, and the FCC's website, *see* Decl. Fahrenkrog ¶ 21, and efforts to cross-check findings against lists produced by LG, appear to have been very time consuming.  AMD has provided the Court with a timeline of events leading up to both its February 2015 motion for leave to amend and the instant motion.  *See* Mot. at 12-13.  The timeline and record make clear that AMD did not simply sit idle for months before filing either motion.  Of course, AMD *could* have renewed its February 2015 motion immediately after the Court lifted the stay.  But AMD chose to prepare a comprehensive update including previously proposed amendments and many others, rather than filing separate motions a few months apart.  The Court is not troubled by AMD's choice to wait and package a single, comprehensive update.

LG cites a number of cases, asserting that because other courts have found delays of three or four months to demonstrate a lack of diligence, the Court should find a lack of diligence here.  Because diligence is a factual inquiry, the unique posture of each case often makes other decisions distinguishable.  *See Word to Info, Inc.*, 2016 WL 6276956, at *6 ("Diligence is a fact intensive inquiry, and courts do not apply a mechanical rule in assessing a party's diligence but instead consider the factual circumstances in total.").  The Court finds that the cases LG cites differ significantly from this case in factual or procedural context and are not determinative here.

Here, although the case has been pending for nearly three years, it is still not far along procedurally as a result of the year-and-a-half stay (obtained on LG's motion, over AMD's objection).  The Court has not set deadlines for fact or expert discovery, or a trial date.  While the

parties are approaching their *Markman* hearing, AMD served its amended infringement contentions on LG over two months before opening claim construction briefing.[6]   Having reviewed the updated infringement contentions, declarations of counsel, and correspondence between AMD and LG leading up to AMD's proposed amendments, the Court finds that AMD was sufficiently diligent in seeking leave to amend.[7]   The Court must now consider whether the proposed amendments unreasonably prejudice LG.

## II.      Prejudice to Defendants

AMD's diligence does not automatically excuse the fact that the amendments it seeks at this stage are voluminous.  LG argues that the amendments are prejudicial in three broad respects: (1) the amendments materially expand the size and complexity of this litigation; (2) AMD seeks to "significantly" change some of its infringement theories; and (3) expansion of the case would unduly burden the Court and, eventually, a jury.  Opp'n at 15-21.

First, LG argues that by expanding the number of unique accused products in this case from 327 to 821, and by introducing 21 new claim charts, AMD would further complicate this litigation nearly three years after its filing date.  As set forth above, however, despite the fact that this case was filed in March 2014, the case is still young procedurally.  LG has not described with any specificity how it would be prejudiced by having to defend against the additional claims in this action, without discovery deadlines or a trial date, as opposed to defending against the claims in a parallel action.   Indeed, LG may benefit from the efficiencies of defending against the allegations in a single action.

Second, LG provides the Court with some examples from AMD's proposed infringement contentions that LG claims have significantly changed AMD's infringement analysis in this case.

---

[6] Not to mention that many of the proposed amendments were first served over two years ago, before the stay.

[7] And regardless, "even if the movant was arguably not diligent, the court may still grant leave to amend."  *Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 12-0630-LHK (PSG), 2012 WL 5632618, at *5 (N.D. Cal. Nov. 15, 2012); *see id.* ("Courts have allowed amendments when the movant made an honest mistake, the request to amend did not appear to be motivated by gamesmanship, or where there was still ample time left in discovery.").

United States District Court
Northern District of California

Opp'n at 16-19.  LG argues that AMD's "new, previously undisclosed theories of infringement will *likely* raise new claim construction disputes . . . *potentially* requiring a second round of claim construction."  Opp'n at 19 (emphasis added).  LG states that it "may be forced to seek leave to amend its Invalidity Contentions as well."  *Id.*  LG further argues that "significant discovery has already taken place" and that "much of that discovery may need to be repeated if AMD is now permitted to alter the scope of the case . . . ."  *Id.* at 20.

Given the lack of specificity in LG's opposition, the Court is not persuaded.  AMD claims that LG's characterization of its amendments is "highly misleading, overstated, and . . . manufacture[s] issues where there are none."  Reply (Dkt. No. 140) at 11.  Plenty of time remains to address AMD's new theories, regardless of how disruptive they are.  Addressing these claims in the same action is more efficient and likely less burdensome.  As AMD points out, "[d]espite having been in possession of all but one of AMD's supplemental charts for more than a month-and-a-half – and the parties being in the midst of the claim construction process – LG[] does not identify any actual impact that AMD's supplemental contentions would have on claim construction."  Reply at 11 (emphasis omitted); *see also* Decl. Fahrenkrog ¶ 18 ("The [new] claim charts do not take new claim construction positions.").[8]

Finally, LG argues that AMD's expansion of this case would unduly burden the Court and the jury, Opp'n at 20-21, and that rejecting the proposed amendments would not prejudice AMD.  *Id.* at 21-22.  These considerations only serve to obscure the Court's prejudice analysis.  The Court must focus on prejudice to LG, not the Court, the jury, or AMD.

On papers submitted, the Court will not attempt to predict every potential impact the proposed amendments might have on the parties' various theories going forward.  In many instances, AMD simply seeks to add new products to preexisting exemplar charts.  *See* Decl.

---

[8] In its opposition, LG identifies specific changes between AMD's previous infringement theories and those found in the proposed amendments.  *See* Opp'n at 16-19.  For example, as counsel for LG referenced during the hearing on this matter, with respect to Kovacevic '945 AMD shifts from asserting that a certain limitation is met based on a MAC controller to an argument that the limitation is met by a TCP networking component or a DASH client subsystem.  *See id.* at 16-17.  However, aside from pointing out AMD's change and making generalized assertions as to how such a change might impact the defendants' reading of prior art, LG does not identify any specific harm at this stage related to claim construction or invalidity.

United States District Court
Northern District of California

United States District Court
Northern District of California

Fahrenkrog ¶ 33.  In other instances, AMD has crafted entirely new exemplars for new sets of products.  *See id.* ¶ 34.  While AMD asserts that "in most cases, the [new] theor[ies] of infringement do[] not differ from previously-accused products, or across the new charts," this means that some theories do.  *Id.*  Based on the record, however, the Court finds that LG will not be unduly prejudiced by AMD's proposed amendments.

The Court does agree with LG that "[t]here must be some reasonable cut-off date after which [the plaintiff] cannot further expand the case simply because [the defendant's] product cycle has outpaced the resolution of this case." *Rembrandt Patent Innovations LLC v. Apple Inc.*, No. 14-5094-WHA, 2015 WL 8607390, at *3 (N.D. Cal. Dec. 13, 2015).  But because of the lengthy stay of this litigation and the relatively early stage at which the parties find themselves procedurally, that "reasonable cut-off date" will be the date of this order.  After these amendments bring the case up to date, AMD is finished adding products going forward.

## CONCLUSION

For the foregoing reasons, AMD's motion for leave to amend infringement contentions is GRANTED.

This order resolves Dkt. No. 128.


**IT IS SO ORDERED**.

Dated:  February 24, 2017

_____
SUSAN ILLSTON
United States District Judge

9